

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-8-2005

# Edwards v. Wyatt

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3325

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Edwards v. Wyatt" (2005). *2005 Decisions.* Paper 1047.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1047

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-3325
_____

JOHN JOSEPH EDWARDS,
                                        Appellant

v.

A. WESLEY WYATT,


_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civil No. 01-1333)
District Judge: Honorable James McGirr Kelly
_____

Argued:  May 26, 2005
_____

Before: SCIRICA, Chief Judge, ALITO and GARTH, Circuit Judges

(Opinion Filed: June 8, 2005)
_____

OPINION
_____

Mark T. Stancil, Esq. (Argued)
Stephen L. Braga, Esq.
Baker Botts
1299 Pennsylvania Avenue, N.W.
The Warner
Washington, D.C. 20004
                    Counsel for Appellant

Jeffrey A. Zucker, Esq. (Argued)
Fisher & Zucker
121 South Avenue of the Arts
Suite 1200
Philadelphia, PA 19107
                    Counsel for Appellee


Garth, Circuit Judge:

This case is before us for the second time on appeal. In this Court's first opinion, *Edwards v. Wyatt*, 335 F.3d 261 (3d Cir. 2003) ("*Edwards I*"), we reversed the District Court's ruling that appellant John Joseph Edwards ("Edwards") anticipatorily repudiated an agreement (the "Handshake Agreement") between Edwards and appellee A. Wesley Wyatt ("Wyatt") and we remanded for the District Court to consider all of the material evidence, including post-July 31, 1998 evidence. Following a second bench trial, the District Court once again concluded, among other things, that Edwards had anticipatorily repudiated the Handshake Agreement. Accordingly, the District Court entered judgment in favor of Wyatt.

On this appeal, Edwards argues that the District Court's ruling on anticipatory repudiation was once again erroneous. We agree and so will reverse the ruling of the

2

District Court and remand the case for further proceedings consistent with this opinion.

## I.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction pursuant to 28 U.S.C. §1291. We exercise plenary review over the District Court's legal conclusions. See *Lansing v. Southeastern Pa. Transp. Authority*, 308 F.3d 286, 290 (3d Cir. 2002). We review the District Court's factual findings for clear error. *Id*.

## II.

We previously set forth the facts of this case in *Edwards I*.[1] Because we write only for the parties, we will only briefly recount the relevant history here.

In brief summary, as stated in *Edwards I*, this case involves a dispute between Edwards and Wyatt concerning control over the Pilot Air Freight Corporation. Control of Pilot involved Edwards, Wyatt and a third party, Phillips. A number of events (including Edwards' bankruptcy) and alignments among the three individuals took place, leading to an unwritten Handshake Agreement on April 30, 1998. The essence of the Agreement was that neither Wyatt nor Edwards would align themselves with Phillips without the participation of the other. Subsequent to this Agreement, Edwards' attorney, Stephen

---

[1] We refer the reader to our opinion in *Edwards I*, 335 F.2d 261 (3d Cir. 2003), for all terms used but not defined herein and for background information.

Braga, wrote two letters, one dated July 30 and the other dated July 31.

In its first opinion, the District Court held that the July 30 and July 31letters together constituted an anticipatory repudiation of the Handshake Agreement by Edwards. On appeal, we reversed the District Court's legal conclusion as unsustainable under Pennsylvania law.

We stated that "to constitute anticipatory breach under Pennsylvania law there must be an '*absolute and unequivocal* refusal to perform or a distinct and positive statement of an inability to do so." *Edwards*, 335 F.3d at 272 (quoting *2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies*, 489 A.2d 733, 737 (Pa. 1985)) (internal quotations omitted). We further recognized that "[t]he Pennsylvania Supreme Court has emphasized that Pennsylvania contract law imposes stricter requirements than does the Restatement for an anticipatory repudiation defense." *Id*. at 272 n.8 (citation omitted).

Based on the foregoing standard, we concluded in *Edwards I* that "[t]he district court's assessment of the July 31 letter, and its rationale in holding that Edwards repudiated his agreement with Wyatt, does not meet the standard set by Pennsylvania of an 'absolute and unequivocal refusal to perform.'" 335 F.3d at 272-73. While we did not hold that there was no repudiation as a matter of law, we expressed serious doubts that the July 31 letter constituted an effective repudiation "in light of the lack of findings to the effect that it was absolute and unequivocal." *Id*. at 274.

4

Based on our determination that "the district court failed to comply with the requirements leading to appropriate factual findings and conclusions of law," we remanded the case to the District Court for a new trial. *Id*. at 276.

On July 14, 2004, the District Court issued a lengthy opinion and order which we review now, in which it made 119 findings of fact and 17 conclusions of law. Pursuant to our instructions in *Edwards I*, it described in detail the various meetings and other events that followed the circulation of the July 31 letter.[2] Its ultimate conclusion, however, remained the same: the July 30 and 31 letters constituted a repudiation of the Handshake Agreement. It then went on to find that Edwards never retracted the repudiation and that the parties never formed a new agreement. Finally, it rejected Edwards' promissory estoppel claim.[3]

Edwards then filed this timely appeal.

### III.

On appeal, Edwards argues that the factual findings set forth in the District Court's second opinion are still inadequate to sustain its legal conclusion of anticipatory

---

[2] A principal reason for our initial remand was the District Court's failure to make any factual findings concerning post-July 31, 1998 events. Thus, we instructed the court to consider the various meetings and other events that followed the July 31 letter which we found to be "highly significant and material in determining whether there was an anticipatory repudiation by Edwards." *Id*. at 273.

[3] As part of our remand in *Edwards I*, we directed the District Court to consider Edwards' promissory estoppel claim, a claim he raised in his complaint, but which the District Court failed to consider.

repudiation. We agree.

On remand, the District Court made two principal, additional findings of fact concerning the July 30 and July 31 letters. First, it found that Wyatt's lawyers, Jay Ochroch and Ira Silverstein, also viewed the Handshake Agreement as terminated. Findings of Fact ¶¶ 81, 87. Second, it found that "[t]he July 31, 1998 letter meant that, absent a new settlement agreement with Wyatt, Edwards was going to both negotiate and conclude a deal with Phillips to the exclusion of Wyatt." Findings of Fact ¶ 85.

In its conclusions of law, the District Court added several paragraphs to support its ruling that Edwards had repudiated the Handshake Agreement. The bulk of these paragraphs are a repetition, in varying forms, of its ultimate conclusion that the July 31 letter objectively manifested an absolute and unequivocal refusal to perform.[4]

---

[4] The relevant paragraphs are as follows:

> 3. Under Pennsylvania law, a notice of termination of a contract that is clear and unambiguous is effective to end a contractual relationship. Here, the letters of July 30 and 31, 1998, from Braga to Ochroch and Silverstein at the law firm of Fox Rothschild O'Brien & Frankel, unequivocally stated Edwards' intention to terminate or repudiate the Handshake Agreement effective immediately.

> 4. Moreover, Braga's July 31, 1998 letter on behalf of Edwards, standing alone, clearly and objectively manifested Edwards' refusal to perform under the terms of the Handshake Agreement and constituted an anticipatory repudiation that terminated this agreement. A repudiation occurs before the time to perform has arrived. Under Pennsylvania law, an anticipatory breach of contract requires "an absolute and

6

unequivocal refusal to perform or a distinct and positive statement of an inability to do so." "A statement by a party that he will not or cannot perform in accordance with agreement creates such a breach."

In Braga's July 31, 1998 letter, Braga wrote that Wyatt had "a one-week period within which to conclude a settlement agreement with John [Edwards]," otherwise Edwards would then violate the Handshake Agreement by concluding an independent settlement agreement with Phillips. Not only did Braga's July 31, 1998 letter on behalf of Edwards affix the additional requirement of a new settlement agreement between Edwards and Wyatt to the Handshake Agreement, but it also required that this agreement be formed within a one week time frame. By affixing these additional requirements as conditions to Edwards' performance under the Handshake Agreement, Edwards expressed an "absolute and unequivocal" refusal to perform in accordance with the original terms of the Handshake Agreement, and that refusal repudiated the Handshake Agreement.

5. Collectively, Braga's July 30 and 31, 1998 letters were an absolute and unequivocal termination of not only the Handshake Agreement, but also the entire cooperating relationship between Edwards and Wyatt, which at that point in time was an alliance between Edwards and Wyatt against Phillips.

6. Braga's July 30, 1998 letter on behalf of Edwards gave clear and unambiguous notice of intent to terminate or repudiate the Handshake Agreement and the cooperating relationship by stating that "something fundamental has changed," that "John [Edwards] has gone over the edge," and that as a result of this change it is confirmed that, "there really is no ongoing relationship" between Edwards and Wyatt.

7. Braga's July 31, 1998 letter reaffirms Edwards' intent to terminate or repudiate the Handshake Agreement and the

7

After carefully reviewing the District Court's opinion on remand, we conclude that the District Court's second opinion suffers from the same ultimate error as its initial attempt: it erroneously applied the strict Pennsylvania anticipatory repudiation standard by emphasizing subjective considerations, rather than evaluating whether Edwards absolutely and unequivocally repudiated the Handshake Agreement in an objective sense. Specifically, its most significant additional finding was that Wyatt's *attorneys* believed the July 30 and July 31 letters terminated the Handshake Agreement. However, we reject Wyatt's contention, unsupported by case law, that the opinion of retained counsel is somehow less subjective than a party's own belief such that an alleged repudiation would be deemed to be apparent in the objective sense. *See* Restatement (Second) of Contracts § 250 cmt. b (1981) ("to constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform").

Even though it greatly expanded its opinion on remand, the factual findings underlying the District Court's legal conclusion of repudiation remain essentially the

cooperating relationship by informing Wyatt that "it is clear that there is no turning back from what John [Edwards] views as the breach of his relationship with Wes [Wesley]," and that negotiating new settlement agreement between Edwards and Wyatt is the only means by which Wyatt could prevent an independent settlement agreement between Edwards and Wyatt's "arch enemy," Phillips, which, prior to the July 30, 1998 termination or the July 31, 1998 repudiation, would have been a breach of the Handshake Agreement.

District Ct. Mem. and Order, July 14, 2004, at 26-29.

8

same – Braga's written statements contained in the July 30 and July 31 Letters. In *Edwards I*, we expressed serious doubts as to whether the District Court's factual findings concerning those statements satisfied Pennsylvania's strict anticipatory repudiation standard. Here, we once again conclude that the District court's factual findings cannot sustain its legal conclusion that Edwards anticipatorily repudiated the Handshake Agreement. Accordingly, the District Court's ruling must be reversed.

On this appeal, however, Edwards seeks not only a reversal of the District Court's ruling, but also asks us to hold that there was no anticipatory repudiation as a matter of law. This we cannot do on the basis of the District Court's opinion. To clarify, we do not order judgment in favor of Edwards, we simply conclude that the District Court erred when, based on an improper evaluation of the evidence and its factual findings, it ordered judgment in favor of Wyatt.

IV.

As a final matter, we must determine the proper course of action following our reversal of the District Court. We note that the district court judge who sat below is deceased, and thus this case will have to be assigned to a new district court judge on remand. Furthermore, the issues in this case are complex and fact intensive. Thus, rather than burden the new judge with the existing record, we will reverse the District Court and remand the case for a new trial so that whomever is assigned to this case below will have the opportunity to consider the evidence afresh, unencumbered by any previous

factual findings and legal conclusions.[5]

---

[5] Because we are remanding for a new trial, including a reevaluation of the threshold anticipatory repudiation question, we do not address the subsequent questions presented on this appeal of whether Edwards retracted the alleged repudiation, whether a new agreement was formed by the parties, or whether Edwards successfully made out a claim of promissory estoppel. In addition, we do not reach Edwards' claim that the District Court's factual finding as to the date of the Coffee Shop Meeting was clearly erroneous.

In addition, we note that the District Court also considered whether Edwards would have been able to prove damages. That discussion was clearly dicta in light of the fact that it ordered judgment in favor of Wyatt.